IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

|   |   |
|---|---|
| IN RE: | ) |
|  | ) |
| VINCENT ANTHONY TROPEA | )   CASE NO. 04-1887 |
|  | ) |
| Debtor. | ) |

## MEMORANDUM OPINION

David M. Mezzenotte, an unsuccessful stalking horse bidder for the business assets of Vincent Anthony Tropea (the "Debtor"), requests that this Court award him a "finder's fee" of $3,000 to offset his "unrecovered costs." The Debtor and Shell Equipment Company object to the award of any finder's fee on the grounds that no contractual basis exists for awarding the requested fee, and that no independent right to recover such a fee exists under the Bankruptcy Code.

The Court held a hearing in this matter on May 15, 2006, in Wheeling, West Virginia, at which time the Court took the matter under advisement. For the reasons stated herein, the Court will allow Mr. Mezzenotte twenty days from the entry of this order to submit an administrative expense claim against the estate pursuant to 11 U.S.C. § 503(b)(1).

## I. BACKGROUND

The Debtor, a self-employed bar manager, operated a business, Vincent's Upstairs/Downstaris, located at 110 Merchant Street, Fairmont, West Virginia. After the Debtor filed his Chapter 13 bankruptcy petition, he agreed to sell his business to Mr. Mezzenotte and the parties executed a purchase agreement on December 29, 2005. Mr. Mezzenotte tendered a $100 earnest money deposit and agreed to pay $215,000 for the real property and an additional $10,000 for the personal property and business. One day later, the Debtor requested that the Court approve the sale.

On January 9, 2006, the parties amended to purchase agreement to address the Debtor's non-

1

payment of real estate taxes for 2004, and to stop a potential tax sale of the property. Mr. Mezzenotte tendered an additional $3,254 in earnest money – with the understanding that the money would be used to pay the 2004 real estate tax obligation. Meanwhile, on January 12, 2006, the Court granted conditional relief from the automatic stay to Sky Bank, who held a deed of trust on the real property. Relief from the stay was conditioned on the Debtor's failure to timely pay the arrearage on his 2004 real estate taxes by January 27, 2006. Mr. Mezzenotte alleges that by fronting an additional sum of money to the Debtor, he prevented both a tax sale and a foreclosure proceeding.

On January 27, 2006, Shell Equipment Company filed an objection to the proposed sale of the Debtor's business assets to Mr. Mezzenotte and requested that competitive bidding be allowed. Mr. Mezzenotte opposed any competitive bid procedures and filed a motion to specifically enforce his purchase agreement with the Debtor. The Court set Mr. Mezzenotte's motion for hearing on March 27, 2006, and the Court ordered that any competing bids be submitted at the same time. At the March 27, 2006 hearing, the Court denied Mr. Mezzenotte's motion for specific performance and approved Riverview Overlook, L.L.C.'s bid of $255,000 as the highest and best offer. That sale has closed. From the sale proceeds, Mr. Mezzenotte received his initial $100 earnest money deposit and the $3,254 that Mr. Mezzenotte fronted for the payment of the 2004 real estate taxes.

## II. DISCUSSION

Mr. Mezzenotte argues that his actions stopped a potential tax sale of the Debtor's real property, prevented a foreclosure proceeding being initiated by Sky Bank, and preserved the Debtor's business for a competitive bidding process that garnered an additional $30,000 in value for the Debtor's estate. Because the estate would not have this additional value without his efforts, Mr. Mezzenotte contends that he is entitled to a finder's fee of 10% of the additional amount realized from the sale, or $3,000, to offset his "unrecovered costs."

Although Mr. Mezzenotte styled his motion as one for recovery of a "finder's fee," the Court can discern no difference between the "finder's fee" requested and what is commonly known as a "break-up fee" given to a stalking horse bidder. *See, e.g., In re President Casinos, Inc.*, 314 B.R. 786, 788 (Bankr. E.D. Mo. 2004) (describing a "break-up fee" as a fee paid by the seller of property to the initial prospective purchaser – the stalking horse – in the event that the purchaser is out-bid). Break-up fees serve to "compensate the buyer for the risk of being outbid." Bruce A. Markell, *The*

2

*Case Against Breakup Fees In Bankruptcy*, 66 Am. Bankr. L.J. 349, 352 (1992).

Break-up fees are allowed as an administrative expense claim against the estate if they satisfy the standard of section 503(b)(1): the fee must reflect the actual and necessary cost of preserving the estate. 11 U.S.C. § 503(b)(1) (allowing "the actual, necessary costs and expenses of preserving the estate" as an administrative expense of the estate); *e.g., AgriProcesors, Inc. v. Fokkena (In re Tama Beef Packing, Inc.)*, 321 B.R. 496, 497 (B.A.P. 8th Cir. 2005) (allowing a break-up fee as an administrative expense claim on the basis that the "expense arose from a transaction with the estate and that transaction conferred a benefit to the estate."). Pursuant to § 503(b)(1), no express contract need exist providing for a break-up fee; an unsuccessful stalking horse bidder may seek reimbursement of its actual expenses. *Tama Beef Packing, Inc.*, 321 B.R. at 497-98 ("Depending on the circumstances and the terms of the transaction, an unsuccessful stalking horse bidder may seek reimbursement of its actual expenses or it may seek a break-up fee which is designed to compensate the unsuccessful bidder for the risk and costs incurred in advancing the competitive bidding process.").

In this case, Mr. Mezzenotte offered the Debtor $215,000 for the real property that the Debtor had valued at $200,000 on Schedule A, and advanced money for the payment of real estate taxes. Mr. Mezzenotte's counsel argued, without opposition, that his efforts prevented a tax sale and prevented Sky Bank from instituting foreclosure proceedings. Without his efforts, the Debtor and the estate would likely have received less value from the disposition of the Debtor's business property. Accordingly, the Court finds that Mr. Mezzenotte's actions preserved the estate and concludes that he is entitled to recover this actual, necessary costs and expenses.

The purchase agreement between the Debtor and Mr. Mezzenotte, however, is silent as to any allowance of a break-up fee. Thus, Mr. Mezzenotte has not show any contractual basis for the approval of allowing a liquidated percentage fee of 10% of the additional $30,000 realized from the auction of the Debtor's business assets. Likewise, Mr. Mezzenotte did not detail any actual, necessary costs and expenses for preserving the estate at the May 15, 2006 hearing that had not already been reimbursed.

### III. CONCLUSION

Mr. Mezzenotte's actions as the stalking horse bidder preserved, and increased, the value of

the estate; thus, he is entitled to recover his actual, necessary costs and expenses of being the stalking horse bidder pursuant to 11 U.S.C. § 503(b)(1). The Court will allow Mr. Mezzenotte twenty days after entry of this order to file a detailed administrative expense claim for any actual, necessary costs and expenses that he incurred for preserving the estate that have not already been reimbursed.[1]

The Court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

AUG 17 2006

*BANKRUPTCY JUDGE*

---

[1] The Court will not allow any costs or expenses incurred as a result of Mr. Mezzenotte's motion to specifically enforce his purchase agreement with the Debtor inasmuch as that action did not confer any benefit to the estate.

4